IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

RODOLFO STOCK and
ELLA STOCK,

      Plaintiffs,

v.                       Case No. 2:09-cv-000233

MIKE RUTHERFORD, Sheriff of Kanawha
County, West Virginia, JAMES STUCKY,
JOE SHELTON, PAUL ZAKAIB, FRANK COULTER,
LINDA COULTER, CHARLES KING, SUE SANSON,

      Defendants.

PROPOSED FINDINGS AND RECOMMENDATION

This action, filed by Rodolfo and Ella Stock on March 17, 2009, against the Sheriff of Kanawha County, several Kanawha County Circuit Court judges, a Kanawha County Magistrate, a clerical employee of the Kanawha County Magistrate Court and two individuals, Linda and Frank Coulter, relates to the alleged fraudulent sale of a vintage sidewheeler known as the "Iron Duke."[1] Plaintiffs, who are proceeding pro se in this matter, seek return of the Iron Duke, as well as damages for their loss of use of the vessel.

This civil action is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred

---

[1] In the various lawsuits cited below, in the parties' pleadings and in this proposed findings and recommendation, the Iron Duke is alternatively referred to as the "vessel" and the "boat."

to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  Currently pending before the court are (1) a Motion to Dismiss on behalf of Sheriff Michael Y. Rutherford, filed June 5, 2009 (docket # 13); (2) Defendants Frank Coulter and Linda Coulter's Motion to Dismiss, filed June 19, 2009 (# 16); and (3) a Motion to Dismiss filed on behalf of Defendants Shelton, Sansom[2], Zakaib, Stucky and King, filed June 22, 2009 (# 18). Plaintiffs have responded (# 27), and Defendants Rutherford and Shelton, Sansom, Zakaib, Stucky and King have replied (## 28, 30), making the matter ripe for determination.

A.   Allegations in the Complaint.

Plaintiffs filed this action against Kanawha County Sheriff Mike Rutherford, Kanawha County Circuit Court Judges James Stucky, Paul Zakaib and Charles King, Kanawha County Magistrate Joe Shelton, Sue Sansom, clerical assistant to Magistrate Joe Shelton, and Linda and Frank Coulter.

In the Complaint, Plaintiffs allege that Sheriff Rutherford,

> acting in his capacity of Sheriff of Kanawha County, West Virginia, did in violation of the Fo[u]rth Amendment to the Constitution of the United States of America, knowingly and unlawfully seize and sell property described as a vessel, United States Coast Guard Identification Number 233872, the property of Rodolfo and Ella Stock to satisfy a debt assessed against one David Staab by order of a Magistrate of Kanawha County, West

---

[2]   Ms. Sansom's last name is spelled incorrectly in the style of the case.

Virginia.

(# 2, p. 1.)

Plaintiffs further allege that Sheriff Rutherford attempted

to conceal the sale of the vessel by intentionally
misrepresenting the vessel's true United States Coast
Guard Vessel Identification Number and description in
public notices in order to limit the number of bidders to
an acquaintance of the Sheriff's agent in order to allow
the vessel to be sold at a price below the surveyed value
of the vessel.

(# 2, p. 1.)

Plaintiffs assert that they are the true owners of the Iron

Duke, that they purchased it from Robert J. Brown and that David

Staab was never in the chain of ownership.  (# 2, p. 1.)

Plaintiffs ask that the court order the return of the property

illegally seized and that they be compensated for their loss of use

of the Iron Duke.  (# 2, pp. 1-2.)

B.   <u>State Court Actions</u>.

There have been three State court actions filed in the Circuit

or Magistrate Courts of Kanawha County, West Virginia, which the

court will briefly summarize below.

1.   <u>David Jarrell, Sr. v. David Staab and Joe Stock - OSC-3148</u>

<u>- Magistrate Court of Kanawha County, West Virginia</u>.

This action, filed in Kanawha County Magistrate Court on July

5, 2005, by David W. Jarrell, Sr. against David Staab and Joe

Stock, the Plaintiffs' son, alleged that Joe Stock "docked a

paddle-wheeler boat on my dock in April 2003.  The boat was only

3

suppose[d] to be docked for a few weeks.  It is 2 years later and after several requests, the boat still has not been moved." (# 18-2, p. 1.)  Mr. Jarrell asked that the Magistrate Court give him "possession of the boat, so that I can have it disposed of." (# 18-2, p. 1.)

On July 5, 2005, Mr. Jarrell completed an Affidavit of Due Diligence, which was witnessed by Ms. Sansom.  The Affidavit states that Mr. Jarrell

> exercised all options known to me in trying to locate ... David Staab/Joe Stock.  I have searched all records and information supplied by the aforementioned defendant and have checked telephone records, credit offices, neighbors, friends, and relatives to the best of my ability and cannot locate the whereabouts of said defendant.

(# 18-2, p. 2. ) Mr. Jarrell provided the last known addresses of both Mr. Staab and Mr. Stock.  (# 18-2, p. 2.)

On August 29, 2005, Magistrate Joe Shelton entered default judgment against Mr. Staab.  (# 18-2, p. 3.)  Ultimately, Sheriff Rutherford seized and sold the Iron Duke on October 23, 2005.  (# 18-2, p. 4.)

2.  <u>Rodolfo and Ella Stock v. David Jarrell and Richard Maddox - 06-c-1433 - Circuit Court of Kanawha County, West Virginia</u>.

Plaintiffs, by their then counsel, Patrick B. Anderson, filed this action against David Jarrell, Sr. and Richard A. Maddox on July 21, 2006.  The case originally was assigned to Judge Zakaib. (# 18-2, pp. 5-6.)  In the Complaint, Plaintiffs alleged that they are

4

owners of the vessel, the Iron Duke, and that defendants wrongfully took possession of the Iron Duke by means of a Kanawha County Magistrate Order as a method of satisfying a $1,000 judgment. Plaintiffs state that the Order made reference to a "jon boat," West Virginia VIN 233872.   Plaintiffs alleged that the Iron Duke was seized pursuant to the order, instead of the "jon boat."  (# 18-2, p. 7.)  Plaintiffs alleged that defendants knew the wrong vessel had been seized and, in conjunction with the Kanawha County Sheriff's Department, fraudulently attempted to convince Plaintiffs that the seizure was legal.  (# 18-2, p. 8.)  Plaintiffs further alleged that defendants knew that the Kanawha County Magistrate Court had no jurisdiction over the Iron Duke, a vessel registered with the United States Coast Guard and valued at well over $6,000.  (# 18-2, p. 8.) Plaintiffs demanded that the order regarding the "jon boat" seizure be rescinded, that defendants return the fraudulently seized property and that they be reimbursed for damages, including attorney's fees.  (# 18-2, p. 9.)

On March 13, 2007, Judge Zakaib entered an order granting a motion for summary judgment filed by Mr. Jarrell.   Judge Zakaib found that Plaintiffs' son left the Iron Duke at Mr. Jarrell's residence, Mr. Jarrell commenced an action in Kanawha County Magistrate Court for the removal of the Iron Duke and was awarded judgment.  Thereafter, "the boat was attached by the Kanawha County Sheriff's department, an advertisement was published and the boat

was sold." (# 18-2, p. 10.) Judge Zakaib further found that "[a]lthough plaintiffs claim title to the boat, the only thing proffered was a copy of a bill of sale from Pennsylvania. No attempt was made to register the boat in the State of West Virginia or with the United States Coast Guard; hence the defendant was unable to ascertain that the plaintiffs had any entitlement to the boat." (# 18-2, p. 10.) Judge Zakaib stated that while the "Sheriff's sale conceivably may have flaws in it, nonetheless at that point, the defendant Jarrell was out of the picture, having obtained judgment for removal of the boat and the boat having been removed by the Sheriff's Department." (# 18-2, p. 10.) Judge Zakaib dismissed Mr. Jarrell with prejudice. (# 18-2, p. 11.)

On June 6, 2007, this case was reassigned to Judge Stucky after Judge Zakaib realized that he had sued the Plaintiffs' son prior to becoming a judge, and Plaintiffs' son was handling the case for Plaintiffs even though he is not an attorney. (# 18-2, p. 12.)

By order entered August 14, 2007, Judge Stucky granted a motion for summary judgment filed by Mr. Maddox, in light of the absence of claims in the complaint against Mr. Maddox. Mr. Maddox was dismissed with prejudice. (# 18-2, p. 13.)

3. <u>Rodolfo Stock and Ella Stock v. Mike Rutherford, Paul Mattox, Joseph Cicchirillo - 07-C-1674 - Circuit Court of Kanawha County, West Virginia</u>.

Plaintiffs filed this action against Mike Rutherford, in his

6

official capacity as Kanawha County Sheriff, Paul Mattox, Cabinet
Secretary at the West Virginia Department of Transportation and
Joseph Cicchirillo, Commissioner of the West Virginia Division of
Motor Vehicles.  (# 18-2, p. 16.)  The case was assigned to Judge
Jennifer Bailey Walker.

Plaintiffs alleged that they took possession of the Iron Duke,
an 80-foot long sidewheeler manufactured in the early twentieth
century, on March 27, 2003.  (# 18-2, pp. 17-18.)  Plaintiffs
alleged that they made their sale arrangements through David Staab,
a resident of Pennsylvania, and received a bill of sale from the
titled owner, Robert J. Brown, on March 28, 2005.  (# 18-2, pp. 17-
18.)  Plaintiffs further alleged that a vessel the size and nature
of the Iron Duke was not subject to registration with the West
Virginia Department of Motor Vehicles.  Plaintiffs moored the Iron
Duke along the Kanawha River at the residence of David W. Jarrell,
Sr.  (# 18-2, p. 18.)

Plaintiffs further alleged that the Iron Duke was not
operational, but that it was a United States Coast Guard registered
vessel with a vessel identification number and an approximate
appraised value of $680,000 in its current condition and $1,200,000
once restored.  While moored at Mr. Jarrell's residence, Plaintiffs'
son, Joseph H. Stock, began the process of repairing and restoring
the Iron Duke.  The Iron Duke remained at Mr. Jarrell's residence
for well over two years.  On June 1, 2005, Plaintiffs alleged that

Mr. Jarrell requested that Joseph H. Stock remove the Iron Duke.
Because it was not operational, this could only be done by tow or
tug, and Joseph H. Stock began making arrangements for removal of
the Iron Duke.  (# 18-2, p. 19.)

Plaintiffs alleged that on or about July 5, 2005, Mr. Jarrell
filed the magistrate court action referenced above against David
Staab and Joseph H. Stock.  Plaintiffs alleged that at the time of
filing of this action, Mr. Jarrell sought service by publication,
despite the fact that he knew Joseph H. Stock's address.  Plaintiffs
alleged that the Affidavit of Due Diligence completed by Mr. Jarrell
on July 5, 2005, was a sham pleading.  (# 18-2, p. 20.)

On August 24, 2005, Plaintiffs alleged that Mr. Jarrell
completed an affidavit seeking a default judgment against David
Staab and Joseph H. Stock.  Mr. Jarrell sought possession of the
Iron Duke.  Plaintiffs alleged that on August 29, 2005, the
Magistrate Court of Kanawha County entered default judgment against
David Staab and Joseph H. Stock and on September 21, 2005, issued
a Writ of Execution against David Staab.  The Writ of Execution
authorized the Sheriff of Kanawha County to seize the "personal
property of the defendant."  (# 18-2, p. 21.)

Plaintiffs alleged that the deputy executing the Writ of
Execution certified that there was no personal property upon which
the execution could stand and further noted that the Iron Duke was
seized.  (# 18-2, pp. 21-22.)  Plaintiffs alleged that on September

21, 2005, the Magistrate Court of Kanawha County issued a Writ of Possession in favor of Mr. Jarrell authorizing him to take possession of the Iron Duke.  On October 5, 2005, the Sheriff took possession of the Iron Duke and advertized it for Sheriff's sale in the newspaper on October 12, and 18, 2005.  (# 18-2, p. 22.)  On October 20, 2005, Plaintiffs alleged that the Iron Duke was sold to Richard A. Maddox for $92.60.  (# 18-2, p. 22.)

Plaintiffs provided a copy of the bill of sale to the Sheriff on October 24, 2005.  Plaintiffs determined that on October 20, 2005, Mr. Maddox transferred the Iron Duke to Frank Coulter. According to Plaintiffs, a review of the records of the West Virginia Department of Motor Vehicles reveals that Mr. Maddox requested verification of the vehicle identification number ("VIN") of a 1980 "jon boat" by an officer of the Dunbar Police Department. On or about November 29, 2005, Plaintiffs alleged that the Dunbar Police Department certified that the VIN of the Iron Duke was 233872 and that Frank Coulter fraudulently completed a Verification of VIN for the Iron Duke and called it a 1980 "jon boat."  Plaintiffs alleged that the verification was provided to the West Virginia Department of Motor Vehicles. (# 18-2, pp. 23-24.)  In their prayer for relief, Plaintiffs sought return of the Iron Duke, damages and attorney's fees.  (# 18-2, pp. 24-25.)

On August 16, 2007, Sheriff Rutherford filed a motion to dismiss on the ground that the complaint failed to state a claim

9

upon which relief could be granted because Plaintiffs' claim was barred by West Virginia Code § 29-12A-5, which provides for immunity from liability if a loss or claim results from execution or enforcement of the lawful orders of any court. (# 13-2, pp. 11-24.) In response, Plaintiffs asserted that there was a bill of sale effectively transferring ownership to Plaintiffs and that Sheriff Rutherford was only immune from suit if he was acting in accordance with a lawful court order, which Plaintiffs asserted he was not. (# 13-2, p. 26.)  Plaintiffs further argued that "a conspiracy existed between the Sheriff and the purchaser, Richard Maddox, to conceal the pub[l]ic sale of the vessel in question so only one bidder would be informed of said sale." (# 13-2, p. 26.)

On August 24, 2007, Judge Walker sought reassignment because Frank Coulter was a personal friend.  The case was assigned to Judge King. (# 18-2, p. 26.)  On November 9, 2007, the Attorney General of the State of West Virginia filed a motion to dismiss on behalf of defendants Mattox and Cicchirillo seeking dismissal based on Plaintiffs' lack of adherence to the thirty-day rule requiring that Plaintiffs give the State thirty days notice of intent to file an action. See W. Va. Code § 55-17-3(a)(1).  Judge King denied the motion. (# 18-2, p. 27.)

On November 13, 2007, Judge King denied the motion to dismiss filed by Sheriff Rutherford seeking dismissal based on immunity from suit pursuant to West Virginia Code § 29-12A-5. (# 13-2, pp. 11-13,

10

# 18-2, pp. 28-29.)

On January 9, 2008, Judge King directed Plaintiffs to join Frank and Linda Coulter.  Plaintiffs did not do so. (# 18-2, 34.) On January 11, 2008, Judge King vacated his earlier order denying the Attorney General's motion to dismiss because defendants Mattox and Cicchirillo did not have proper notice.  (# 18-2, pp. 30-31.) On March 3, 2008, Judge King conducted a hearing on the motion to dismiss related to defendants Mattox and Cicchirillo, but Plaintiffs did not appear.  At the hearing the court granted the motion and indicated a written order would be entered.  (# 18-2, p. 37.)  On March 10, 2008, Judge King entered an order granting defendants Paul Mattox and Joseph Cicchirillo's motion to dismiss.  (# 18-2, pp. 32-33.)  In the order entered by Judge King, he stated that after the March 3, 2008, hearing, Plaintiffs' counsel had an "Order to Amend Complaint to Add Parties Defendants and an Amended Complaint hand-delivered to this Court."  (# 18-2, p. 37.)  Judge King indicated that the court received these documents after the case had already been dismissed.  (# 18-2, p. 38.)

On March 4 [sic 3], 2008[3], Judge King also conducted a hearing at which Sheriff Rutherford orally moved to dismiss the claim against him "based upon the Plaintiffs' failure to comply with the

---

[3] There is some discrepancy in the documents regarding the dates of the hearing(s) before Judge King, one indicated a hearing was conducted on March 3, 2008, while another was conducted on March 4, 2008.  (# 18-2, pp. 34, 37.) It appears that one hearing was held on March 3, 2008.

Court's earlier ruling and for failure to join indispensable parties."[4] (# 18-2, p. 35.) Judge King noted that Plaintiffs were directed to bring in the Coulters as defendants or suffer dismissal for failure to join indispensable parties, but Plaintiffs did not do so. Judge King ruled that upon "consideration of the motion and exhibits, the record in this and other cases filed in the Magistrate and Circuit Courts of Kanawha County and controlling legal authority, the Court grants Sheriff Rutherford's motion to dismiss." (# 18-2, p. 35.)

On April 2, 2009, Plaintiffs moved the court to reconsider its orders dismissing defendants. The court denied Plaintiffs' motion. (# 18-2, pp. 39-40.)

C. <u>Arguments of the Parties</u>.

1. <u>Sheriff Mike Rutherford</u>.

Sheriff Rutherford argues that Plaintiffs' claims are barred by the doctrine of <u>res judicata</u>. Sheriff Rutherford asserts that Plaintiffs have unsuccessfully pursued identical claims in the Circuit Court of Kanawha County. In particular, Plaintiffs' claim of ownership of the Iron Duke was decided against them in civil action number 06-C-1433 and their claims against the Sheriff were dismissed in civil action number 07-C-1674. (# 14, pp. 1-3.) Sheriff Rutherford also asks that the court declare that Plaintiffs'

---

[4] Judge King noted that Linda Coulter appeared at the hearing "pursuant to [his] earlier ruling on her motion to intervene." (# 18-2, p. 34.)

claims were not made in good faith and, as a result, Plaintiffs should be required to reimburse the Sheriff for his expenses, including attorney's fees incurred in defending this action. (# 14, p. 3.)

2.  <u>Frank and Linda Coulter</u>.

The Coulters argue that Plaintiffs have not stated a claim against them in the Complaint.  Indeed, "nowhere in the [Complaint] is [there] any mention of wrongdoing, [breach] of contract, negligence, strict liability or any lawfully determined improper conduct alleged against the Coulters." (# 17, p. 3.)  The Coulters further assert that any alleged violation of Plaintiffs' Fourth Amendment rights is unfounded and not properly supported in the Complaint. (# 17, p. 3.)

3.  <u>Shelton, Sansom, Zakaib, Stucky and King</u>.

Magistrate Joe Shelton, Sue Sansom and Judges Zakaib, Stucky and King raise six arguments in support of their Motion.  Judges Zakaib, Stucky, and King and Magistrate Shelton argue that the doctrine of judicial immunity bars Plaintiffs' claims against them and that the two exceptions to judicial immunity, when the official performs a nonjudicial act or took action in complete absence of all jurisdiction, do not apply.  These Defendants assert that they presided in cases assigned to them, ruled on various motions in the cases and signed orders, all acts that are judicial in nature.  In addition, they assert there is no credible argument that they acted

13

in complete absence of all jurisdiction.  (# 19, pp. 7-9.)

Ms. Sansom asserts that the claim against her should be dismissed under the doctrine of quasi-judicial immunity.  Ms. Sansom, who serves as a clerical assistant to Magistrate Shelton, witnessed a party sign an affidavit to allow the service of publication.  Ms. Sansom argues that the witnessing of such an affidavit can be considered an integral part of the judicial process because a party must file such an affidavit before another party may be served by publication.  (# 19, p. 11.)

Magistrate Shelton, Ms. Sansom and Judges Zakaib, Stucky and King argue that Plaintiffs are seeking to recover for an injury caused by the State court judgments, and, as such, the Complaint should be dismissed pursuant to the Rooker-Feldman doctrine.  (# 19, pp. 11-14.)

Next, Magistrate Shelton, Ms. Sansom and Judges Zakaib, Stucky and King assert that they are entitled to Eleventh Amendment immunity.  They assert that in the Complaint, Plaintiffs refer to the Fourth Amendment, but have not specified whether they are asserting a § 1983 claim, and, if so, whether they are asserting individual or official capacity claims.  To the extent the Complaint is interpreted as stating an official capacity claim, these Defendants assert that Eleventh Amendment immunity bars such claims against them.  (# 19, pp. 14-17.)

Magistrate Shelton, Ms. Sansom and Judges Zakaib, Stucky and

14

King also argue that Plaintiffs' Complaint should be dismissed because it was filed outside the two-year statute of limitations established by West Virginia Code § 55-2-12. These Defendants point out that the Iron Duke was sold on October 23, 2005, while Plaintiffs filed their first State court action on July 21, 2006. Thus, these Defendants assert that Plaintiffs were aware of the sale of the Iron Duke by July 21, 2006, but did not file the instant action until March 17, 2009, more than two years and seven months after they knew the Iron Duke had been sold. (# 19, pp. 17-18.)

Finally, Magistrate Shelton, Ms. Sansom and Judges Zakaib, Stucky and King contend that Plaintiffs did not allege any wrongful conduct by them in the Complaint. These Defendants are named in the style of the case, but not mentioned elsewhere in the Complaint. (# 19, pp. 18-19.)

4. <u>Plaintiffs' Response</u>.

Plaintiffs filed a joint response in which they provide a "condensed version of what transpired and why we are trying to [get] unbiased justice in Federal Court." (# 27, p. 1.)

Plaintiffs state that

[t]he vessel Iron Duke USCG HIN233872 was the subject of a law suit brought against the former owner who never held valid title and the son of the legal owners, the Stocks. However, in Magistrate Court no one was notified and Joe Shelton's secretary, Sue Sanson [sic] signed an affidavit of due diligence stating that the Stock's son could not be found to be served. However, this affidavit was dated the same day the suit was filed. The Stock's son can produce evidence showing he was on the above mentioned vessel within five days of this affidavit being

15

filed.  This oversight started the chain of events which has led to this being in Federal Court.  After a default judgement was entered against David Staab, the vessel was advertised for sale by the Kanawha County Sheriff wrongly in the Charleston Newspapers.  The vessel was sold at Sheriff's Sale by D E Skip King to Mr. R. Maddox who through an illegal [W]est Virginia VIN verification form obtained a title through the State of West Virginia for a John [sic] Boat.

When the boat was moved from David Jarrell's property after the sale, Joe Stock contacted D E King and was told that he would be arrested if he interfered.  Mr. Stock then contacted John Hackney, Attorney at Law, who wrote a letter regarding the boat to Mr. King and as of this date no response has ever been received by Mr. Hackney.

Dr. Stock then obtained the services of Harry Davis, private investigator, to find out exactly what happened to his boat.  After many hours of research, Mr. Davis, then found out that it was sold by the Kanawha County Sheriff to satisfy the supposed debt of David Staab. This brings up the question of how one unrelated person can be held responsible and personal property seized to satisfy the debt on another.  Dr. and Mrs. Stock then filed lawsuits against several individuals including Mr. Rutherford, Mr. Jarrell, Mr. Maddox and West Virginia DMV.  This suit was heard by Paul Zakaib.  After an extended time, Mr. Zakaib decided to recuse himself due to the fact that he had filed a suit years prior against Mr. Stock's son.  Why the recusal no one actually knows since Mr. Stock's son was not a party in the suit. However, it was proven and is on record that Mr. Staab was never in the chain of title of the Iron Duke.

The suit was then heard by Judge Charles King, who upon investigation, is the brother-in-law of Sheriff DE Skip King.  Judge King ruled from the bench for the Stocks to go get their boat.  The next day Frank and Linda Coulter the people who bought the boat from Rick Maddox wanted to be included in the suit.  A new hearing was scheduled. The notice of this hearing was never received by the plaintiffs or the plaintiff's [sic] attorney at the time, Mr. Anderson.  Judge King then dismissed the case the day before it was to be heard citing that the plaintiffs did not show up.  A motion for reconsideration was never answered by the judge to this date.

16

> The preceding is a condensed version of the reason why we
> feel that we deserve a fair hearing and an impartial
> hearing by a Federal Judge in this matter.  The vessel,
> Iron Duke, was being restored and is one of less than a
> dozen side wheel vessels left in the United States.  The
> vessel was valued at $500,000 at the time it was
> illegally seized.  The vessel is now being destroyed and
> made into a boat dock by the Coulters.  The history alone
> of this United States Coast Guard documented vessel and
> we as the true owners are asking for justice by the
> Federal Court.

(# 27, pp. 1-2.)

    5.   <u>Reply by Sheriff Rutherford</u>.

In reply, Sheriff Rutherford asserts that Plaintiffs do not contest any of the factual or legal grounds which support his motion, and instead Plaintiffs "repackage and restate the same claims that they have been pursuing, unsuccessfully, since the vessel was sold by Court Order on October 20, 2005." (# 28, p. 1.) Sheriff Rutherford joins in the response filed by Magistrate Shelton, Ms. Sansom and Judges Zakaib, Stucky and King. (# 28, p. 3.)

    6.   <u>Reply by Shelton, Sansom, Zakaib, Stucky and King</u>.

In reply, Magistrate Shelton, Ms. Sansom and Judges Zakaib, Stucky and King assert that court records from each of the three underlying civil cases show that these Defendants performed their official duties in the Magistrate and Circuit Courts of Kanawha County, West Virginia.  Regarding Ms. Sansom and Plaintiffs' allegation that she witnessed an affidavit of due diligence, but that the defendants in the magistrate court case could have been

located, Ms. Sansom points out that "[w]hether or not the defendants could have been located is immaterial to the claim against [her,] ... [h]er duty was to witness the affidavit, not to determine whether the allegations included in it were true or not. The named defendants in the underlying magistrate court case are the parties who had the responsibility to challenge the method of service." (# 30, p. 3.) Finally, these Defendants assert that none of the facts in Plaintiffs' response, even if assumed to be true, indicate that Magistrate Shelton, Ms. Sansom or Judges Zakaib, Stucky and King "engaged in any act that would *not* be considered a judicial act or that they acted in the complete absence of all jurisdiction." (# 30, p. 3.) In addition, these Defendants argue that Plaintiffs' unsupported allegations of bias or error do not overcome the doctrine of judicial immunity. (# 30, p. 3.)

D.  Standard of Review.

Defendants have filed their motions to dismiss based on failure to state a claim and lack of subject matter jurisdiction, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

At the outset, the court notes that because Plaintiffs are pro se, the court "is obliged to construe [their] pleadings liberally and search for any 'set of facts in support of [their] claim which would entitle [them] to relief.'" Materson v. Stokes, 166 F.R.D.

18

368, 372 (E.D. Va. 1996) (quoting <u>Haines v. Kerner</u>, 404 U.S. 519, 521 (1972)).  Nevertheless, as the party asserting jurisdiction, the burden of proving subject matter jurisdiction lies with Plaintiffs.  <u>McNutt v. General Motors Acceptance Corp.</u>, 298 U.S. 178, 189 (1936); <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982).

Regarding a motion filed pursuant to Rule 12(b)(1), based on lack of subject matter jurisdiction, the United States Court of Appeals for the Fourth Circuit explained that

> [t]here are two critically different ways in which to present a motion to dismiss for lack of subject matter jurisdiction. First, it may be contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based.  In that event, all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he [or she] would receive under a Rule 12(b)(6) consideration. Second, it may be contended that the jurisdictional allegations of the complaint were not true. A trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations.

<u>Adams</u>, 697 F.2d at 1219 (4th Cir. 1982) (footnote omitted).

In <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not

19

assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  Id. at 555.

The Supreme Court further explained its holding in Twombly in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in Twombley.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [Twombley, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Id., at 556, 127 S.Ct. 1955.
>
> * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1949-50; see also Francis v. Giacomelli, 588 F.3d 186, 193-94 (4th Cir. 2009) (applying Twombly and Iqbal).

E.  Analysis.

    1.  Sheriff Rutherford.

    The court proposes that the presiding District Judge **FIND** that Plaintiffs' claims against Sheriff Rutherford are barred by res judicata, and the court is without jurisdiction to hear Plaintiffs' claims under the Rooker-Feldman doctrine.

    Res judicata bars litigation of complaints that have already been resolved.  Brown v. Felson, 442 U.S. 127, 131 (1979).  Res judicata promotes the finality of judgments and ensures closure to those involved in the litigation.  Montana v. United States, 440 U.S. 147, 153 (1979).  The court must look to state law to determine the preclusive effect of a state court judgment.  Kremer v. Chemical Constr. Corp., 456 U.S. 461, 482 (1982); In re Heckert, 272 F.3d 253, 257 (4th Cir. 2001); In re Genesys Data Technologies, Inc., 204 F.3d 124, 128 (4th Cir. 2000); Osborne v. King, 570 F. Supp.2d 839, 845-46 (S.D. W. Va. 2008).

    In Osborne, the presiding District Judge, quoting Genesys, observed that the application of preclusion principles is subject to a two-part inquiry:

> First, a federal court must look to state law to determine the preclusive effect of the state court judgment. If state law would not bar relitigation of an issue or claim decided in the earlier proceeding, then the inquiry ends-a federal court will not give the state court judgment preclusive effect either. If state law would afford the judgment preclusive effect, however, then a federal court must engage in a second step-it must determine if Congress created an exception to [28 U.S.C.] § 1738[, the Full Faith and Credit Statute]. Only if

> "some exception to § 1738 applie[s]" can a federal court
> refuse to give a judgment the preclusive effect to which
> it is entitled under state law. An exception "will not be
> recognized unless a later statute contains an express or
> implied partial repeal" of § 1738.

Id. at 846 (quoting Genesys, 204 F.3d at 128).

In West Virginia,

> before the prosecution of a lawsuit may be barred on the
> basis of res judicata, three elements must be satisfied.
> First, there must have been a final adjudication on the
> merits in the prior action by a court having jurisdiction
> of the proceedings. Second, the two actions must involve
> either the same parties or persons in privity with those
> same parties. Third, the cause of action identified for
> resolution in the subsequent proceeding either must be
> identical to the cause of action determined in the prior
> action or must be such that it could have been resolved,
> had it been presented, in the prior action.

Blake v. Charleston Area Med. Ctr., Inc., 498 S.E.2d 41, 49 (W. Va.
1997).

Applying the elements of res judicata identified in Blake,
there was a final adjudication on the merits in the prior action by
a court having jurisdiction of the proceedings.  In civil action
number 07-C-1674, Judge King's order dismissing Sheriff Rutherford
is vague, in that he refers to an oral motion from Sheriff
Rutherford to dismiss the case because Plaintiffs failed to follow
the court's order of joining an indispensable party; yet Judge King
also mentions consideration of "the motion and exhibits" in
granting the motion to dismiss.  Judge King had earlier denied the
Sheriff's motion to dismiss.  (# 18-2, pp. 28-29.)  To the extent
Judge King was referring to the earlier motion to dismiss filed by

Sheriff Rutherford, seeking dismissal for failure to state a claim upon which relief can be granted based on immunity under West Virginia Code § 29-12A-5, there was a final adjudication on the merits. Sprouse v. Clay Comm., Inc., 211 S.E.2d 674, 696 (W. Va. 1975) ("[A] judgment dismissing an action under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and without reservation of any issue, shall be [p]resumed to be on the merits, [u]nless contrary appears in the order, and the judgment shall have the same effect of [res judicata] as though rendered after trial in a subsequent action on the same claim.").

West Virginia courts have not spoken on the issue of whether dismissal based on failure to follow a court order is a final adjudication on the merits for res judicata purposes.  However, West Virginia Rule of Civil Procedure 41(b) states that

> [f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.  Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits.

It appears that Judge King dismissed Plaintiffs' claims, at least in part, based on Plaintiffs' failure to follow his order that they join the Coulters.[5]  Pursuant to Rule 41(b), such a dismissal would

_____

[5]   Notably, West Virginia's Rule 41(b) does not identify failure to join an indispensable party as an exception, unlike its federal counterpart. See Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise, a

operate as a final adjudication on the merits.

In addition, there is every indication that Judge King had jurisdiction over the matter.  Thus, the first element of <u>res judicata</u>, a final adjudication on the merits by a court having jurisdiction, has been satisfied.  Thus, whether Judge King dismissed Sheriff Rutherford based on failure to follow his order or based on failure to state a claim upon which relief can be granted, both are final adjudications on the merits under West Virginia law.

Next, the State action, civil action number 07-C-1674, and the instant action involve the very same parties, Rodolfo and Ella Stock and Sheriff Rutherford, thus satisfying the second element of the <u>res judicata</u> analysis.

Third, the cause of action identified for resolution in the instant proceeding could have been resolved, had it been presented, in the prior action.  In the instant action, Plaintiffs assert in their Complaint that Sheriff Rutherford violated their Fourth Amendment[6] rights by knowingly and unlawfully seizing and selling the Iron Duke.  In addition, Plaintiffs allege that the Sheriff

---

dismissal under this subdivision (b) and any dismissal not under this rule - except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 - operates as an adjudication on the merits.").  In any event, the Coulters had already intervened in the action at the time of Judge King's order and, the order dismissing Sheriff Rutherford indicates that at least in part, he was dismissed from the action based on Plaintiffs' failure to follow an order.

[6]  It appears to the court that Plaintiffs likely intended to allege a violation of their due process rights under the Fifth and Fourteenth Amendments.

attempted to conceal the sale of the Iron Duke "by intentionally misrepresenting the vessel's true United States Coast Guard Vessel Identification Number and description in public notices in order to limit the number of bidders to an acquaintance of the Sheriff's agent in order to allow the vessel to be sold at a price below the surveyed value" and "refuse[d] to respond to attempts to secure information regarding the sale of [the] vessel despite repeated requests ...."  (# 2, p. 1.)

In the complaint filed in civil action number 07-C-1674, Plaintiffs alleged that Sheriff Rutherford's deputy, D.E. King, seized the Iron Duke in October of 2005, advertised it for sale in the newspaper and eventually sold it to Mr. Maddox.  (# 13-2, p. 7.) Plaintiffs further alleged a "conspiracy beginning with the misleading and improperly noticed Kanawha County Sheriff's Sale, [and] the purchase by Deputy King's close friend, Mr. Maddox ...." (# 13-2, p. 9.)  More succinctly in their response to Sheriff Rutherford's motion to dismiss, Plaintiffs stated that "a conspiracy existed between the Sheriff and the purchaser, Richard Maddox, to conceal the pub[l]ic sale of the vessel in question so only one bidder would be informed of said sale." (# 13-2, p. 26.)

The allegations underlying both the federal and State complaints are nearly identical, and Plaintiffs seek the same relief; return of the Iron Duke.  In both cases, Plaintiffs base their claims on the assertion that Sheriff Rutherford improperly

seized and sold the Iron Duke.  While Plaintiffs do not allege a constitutional violation in their State action (alleging, albeit vaguely, conspiracy), they certainly could have raised such a claim against the Sheriff pursuant to Rule 18 of the West Virginia Rules of Civil Procedure, and it could have been resolved by Judge King.

Turning to the second inquiry identified in <u>Osborne</u>, there is no indication that an exception to § 1738 exists, such as a later statute containing an express or implied partial repeal of § 1738. <u>Osborne</u>, 570 F. Supp.2d at 846.

Alternatively, the court proposes that the presiding District Judge **FIND** that this court is without jurisdiction to hear Plaintiffs' claims under the <u>Rooker-Feldman</u> doctrine.

The Supreme Court made clear in <u>District of Columbia Ct. Of App. v. Feldman</u>, 460 U.S. 462 (1983) and <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923), that "federal courts are divested of jurisdiction 'where entertaining the federal claim should be the equivalent of an appellate review of the state court order.'" <u>Friedman's Inc. v. Dunlap</u>, 290 F.3d 191, 196 (4th Cir. 2002)(quoting <u>Jordahl v. Democratic Party of Va.</u>, 122 F.3d 192, 202 (4th Cir. 1997)); <u>Plyler v. Moore</u>, 129 F.3d 728, 733 (4th Cir. 1997)(<u>Rooker-Feldman</u> applies when the federal action "essentially amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court."). More recently, the Supreme Court reiterated that the <u>Rooker-Feldman</u>

doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). In short, Rooker-Feldman prohibits lower courts from considering claims actually decided by a state court, Rooker, 263 U.S. at 415-16, and claims "inextricably intertwined" with a prior state court judgment. Feldman, 460 U.S. at 483 n.16.

Plaintiffs' federal court action is the functional equivalent of an appeal not only of Judge King's decision in civil action number 07-C-1674, but also of the rulings referenced above in Kanawha County Magistrate Court, OSC-3148, and in Stock v. Jarrell, et al., 06-C-1433. In the State court actions in Kanawha County Circuit Court, Plaintiffs sought return of the Iron Duke and took issue with its sale following Magistrate Shelton's ruling. In the instant action, Plaintiffs are attempting to undo the actions that resulted from the State court cases. As in the Kanawha County Circuit Court cases filed after the Magistrate Court case that resulted in the sale of the Iron Duke, Plaintiffs seek the very same relief: return of the Iron Duke. (# 18-2, pp. 9, 25.) The instant federal action, filed under the guise of a violation of Plaintiff's Fourth or Fifth Amendment rights, simply does not hold up under Rooker-Feldman.

27

Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge dismiss Sheriff Rutherford from this action because res judicata bars Plaintiffs' claims and the court is without jurisdiction to hear Plaintiffs' claims under the Rooker-Feldman doctrine. The court further respectfully **RECOMMENDS** that the presiding District Judge deny Sheriff Rutherford's request for attorney's fees, as he provides no statutory or other support for such fees.

    2. <u>Frank and Linda Coulter</u>.

Even taking the Complaint in the light most favorable to Plaintiffs, the court proposes that the presiding District Judge **FIND** that Plaintiffs have failed to state a claim against the Coulters upon which relief can be granted. In the alternative, the court proposes, for the reasons discussed above, that the presiding District Judge **FIND** that to the extent Plaintiffs allege claims against the Coulters, the court is without jurisdiction to hear Plaintiffs' claims under the Rooker-Feldman doctrine.

There is no mention of the Coulters in Plaintiffs' original Complaint. Even in their response to the motions to dismiss, Plaintiffs do not allege claims of wrongdoing against the Coulters and state only that in the civil action in the Kanawha County Circuit Court before Judge King, civil action number 07-C-1674, the day after Judge King held a hearing in which "he ruled from the bench for the Stocks to go get their boat," "the next day Frank and

Linda Coulter the people who bought the boat from Rick Maddox wanted to be included in the suit." (# 27, p. 1.) As Plaintiffs acknowledge, the case was ultimately dismissed by Judge King. Further, Plaintiffs did not appeal the dismissal.

Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge dismiss Frank and Linda Coulter for Plaintiffs' failure to state a claim against them upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and, in the alternative and for the reasons discussed above related to Sheriff Rutherford, because the court is without jurisdiction to hear Plaintiffs' claims under the <u>Rooker-Feldman</u> doctrine.

3. <u>Shelton, Sansom, Zakaib, Stucky and King</u>.

The court proposes that the presiding District Judge **FIND** that Plaintiffs failed to state a claim against Judge Stucky, that the doctrine of judicial immunity bars the claims against Magistrate Shelton and Judges Zakaib, King and Stucky (alternatively and to the extent Plaintiffs intended to allege claims against Judge Stucky). The court further proposes that the presiding District Judge **FIND** that the claims against Ms. Sansom should be dismissed pursuant to the doctrine of quasi-judicial immunity. Finally, for the reasons discussed above, the court proposes that the presiding District Judge **FIND** that the court is without jurisdiction to hear Plaintiffs' claims under the <u>Rooker-Feldman</u> doctrine.

29

     a.  <u>Judge Stucky</u>.

Neither the Complaint nor Plaintiffs' response to the motions to dismiss mention Judge Stucky.  As such, Plaintiffs have failed to state a claim against Judge Stucky.  To the extent Plaintiffs intended to allege claims against Judge Stucky, Judge Stucky is immune from suit as discussed further below.

     b.  <u>Judges Zakaib, Stucky and King</u>.

Judicial immunity is a firmly rooted principle of law that shields judicial officers from civil suit for actions taken in exercise of their judicial functions.  <u>Stump v. Sparkman</u>, 435 U.S. 349, 360 (1978).  The primary policy that supports judicial immunity is also well-established.  As early as 1871, the Supreme Court recognized that it is:

> a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him [or her], [should] be free to act upon his [or her] own convictions, without apprehension of personal consequences to himself [or herself].

<u>Bradley v. Fisher</u>, 80 U.S. 335, 347 (1871).

The scope of judicial immunity is interpreted broadly.  In <u>Bradley</u>, the Supreme Court held: "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."  <u>Id.</u> at 351.

The only exceptions to absolute judicial immunity are for non-judicial acts, or where the act is done in complete absence of jurisdiction.  <u>Stump</u>, 435 U.S. at 360; <u>Bradley</u>, 80 U.S. at 351. Even if the judge acted in error, he or she is still immune. <u>Stump</u>, 435 U.S. at 356.  The Supreme Court has stated that a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive." <u>Forrester v. White</u>, 484 U.S. 219, 227 (1988) (citing <u>Bradley</u>, 80 U.S. at 354).  As to state magistrates in particular, they are judicial officers and also enjoy judicial immunity for actions taken in their judicial capacity.  <u>King v. Myers</u>, 973 F.2d 354, 356 (4th Cir. 1992).

Plaintiffs' Complaint does not mention Judges Zakaib, Stucky or King.  However, in response to the motion to dismiss, Plaintiffs state that Judge Zakaib recused himself because he had sued Plaintiffs' son several years prior, even though Plaintiffs' son was not a party to the action.  (# 27, p. 1.)  In addition, Plaintiffs state in their response that Judge King is the brother-in-law of D.E. Skip King, that Judge King ultimately dismissed their case without proper notice to Plaintiffs and that Judge King never answered a motion to reconsider.  (# 27, p. 1.)  As noted above, neither the Complaint nor the response mention Judge Stucky.

Reading Plaintiffs' Complaint and response liberally, Magistrate Shelton and Judges Zakaib, Stucky and King engaged only in judicial acts in the allegations contained in Plaintiffs'

31

Complaint; they presided over the cases before them, entered orders and conducted hearings. Furthermore, there is no indication that any of these individuals acted in complete absence of jurisdiction.

       c.  <u>Ms. Sansom</u>.

The court proposes that the presiding District Judge **FIND** that Ms. Sansom is entitled to quasi-judicial immunity.

In <u>Kincaid v. Vail</u>, 969 F.2d 594, 600-01 (7th Cir. 1992), the United States Court of Appeals for the Seventh Circuit, in determining whether a state court clerk was entitled to judicial immunity, held that

> in approaching claims of absolute judicial immunity, we keep paramount in our analysis that "[a]bsolute immunity is designed to free the <u>judicial process</u> from the harassment and intimidation associated with litigation." When, as here, we are dealing with the application of the doctrine to auxiliary judicial personnel, we must remember the "danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts ... warrants this extension of the doctrine." Certainly, when such personnel perform judicial or quasi-judicial functions such as the issuance of arrest warrants, they perform a function integral to the judicial process and receive the same protection as full-fledged judicial officers.

(citations omitted); <u>see</u> <u>Sykes v. Huggins</u>, C.A. No. 4:08-03937-RBH, 2009 WL 250103, at *3 (D. S.C. Jan. 29, 2009) (finding that county court clerk was entitled to quasi-judicial immunity and noting Fourth Circuit's decision in <u>Pink v. Lester</u>, 52 F.3d 73, 77 (4th Cir. 1995), overruling <u>McCray v. Maryland</u>, 456 F.2d 1, 6 (4th Cir. 1972), which held that clerks of court might be held liable for

negligent conduct in the filing of prisoner pleadings).

Likewise, in <u>Sampson v. City of Xenia</u>, 108 F. Supp.2d 821, 829 (S.D. Ohio 1999), the United States District Court for the Southern District of Ohio acknowledged that

> [i]t is well-established Sixth Circuit law that court clerks and other court employees have absolute immunity against liability for actions arising out of the performance of judicial or quasi judicial functions. <u>Foster v. Walsh</u>, 864 F.2d 416, 418 (6th Cir. 1988). "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." <u>Bush v. Rauch</u>, 38 F.3d 842, 847 (6th Cir. 1994).

Ms. Sansom is a clerical assistant to Magistrate Shelton, a judicial officer who the court has recommended is entitled to absolute judicial immunity. Although not mentioned in their Complaint, Plaintiffs allege in their response to the motion to dismiss, that Ms. Sansom signed an affidavit of due diligence stating that Plaintiffs' son could not be found to be served. (# 27, p. 1.) Ms. Sansom was performing her duties as Magistrate Shelton's assistant and as such, was acting in a quasi-judicial capacity in signing the affidavit. Therefore, she is entitled to quasi-judicial immunity.

Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge dismiss Magistrate Shelton and Judges Zakaib, King, and Stucky (to the extent claims are alleged as to Judge Stucky) on absolute immunity, and Ms. Sansom based on quasi-judicial immunity. In addition, the court respectfully **RECOMMENDS** that the presiding

33

District Judge find, for the reasons discussed above related to Sheriff Rutherford, that it is without jurisdiction to hear Plaintiffs' claims against Magistrate Shelton, Ms. Sansom, and Judges Zakaib, King and Stucky (to the extent claims are alleged as to Judge Stucky) under the <u>Rooker-Feldman</u> doctrine.

F. <u>Recommendation</u>.

For the reasons stated herein, the undersigned proposes that the presiding District Judge **FIND,** pursuant to Rules 8(a), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, that this action should be dismissed. Therefore, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the respective Defendants' motions to dismiss (## 13, 16 and 18), and dismiss this matter from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections), and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation, within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such

34

objection.   Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals.   Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).   Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiffs and counsel of record.

January 19, 2010
        Date

Mary E. Stanley
Mary E. Stanley
United States Magistrate Judge